**NEXUS BANKRUPTCY**
BENJAMIN HESTON (297798)
3090 Bristol Street #400
Costa Mesa, CA 92626
Tel: 949-312-1377
Fax: 949-288-2054
ben@nexusbk.com

Attorney for Debtor

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>TOBY EDWARD TORRES,<br><br>Debtor.<br><br>COMPLETE INDUSTRIAL REPAIR, INC.,<br><br>Plaintiff,<br><br>v.<br><br>TOBY EDWARD TORRES,<br><br>Defendant. | Case No.: 2:23-bk-13864-DS<br><br>Chapter 7<br><br>Adv. No.: 2:23-ap-01426-DS<br><br>**DEFENDANT'S TRIAL BRIEF**<br><br>**TRIAL**<br><br>Date: May 20, 2025<br>Time: 10:00 AM<br>Courtroom: 1639 |

## STATEMENT OF FACTS

Plaintiff Complete Industrial Repair (CIR) is a large machine shop providing general machine work, welding and fabrication, OD&ID grinding, and equipment to balance parts. For its business operations, CIR leased premises at 7403 Telegraph Road, Montebello, CA, owned and/or managed by S.D. Herman Co. ("Herman"), a real estate firm, specializing in the management of industrial and commercial real estate in the greater Los Angeles Area. A portion of these premises was subleased to Defendant Toby Edward Torres ("Torres") from 2013 to 2016, during which time Torres and CIR shared the location.

1

With the full knowledge and consent of CIR, Torres installed a water tank into the ground at the leased premises, which necessitated cutting through the concrete floor. In addition to the water tank, Torres installed Blanchard grinding machines for use with the water storage basin that complied with all local Fire Department and code requirements. The basin, used for water storage as part of a cooling system, was maintained with daily logs to ensure compliance with Fire Department, local, and state codes.

Upon concluding the sublease in 2016, Torres vacated the premises, removing the water tank and restoring the concrete flooring as part of the vacating process.

In December 2016, CIR, after Torres relocated from the premises, CIR offered to purchase the removed water storage basin for $250.00, which Torres accepted. CIR then used the water basin for its business operations, specifically for washing motor shafts with an overhead crane. This use was part of CIR's operations, which involved grease, oil, powder coatings, and steel metal spray coatings, all conducted without appropriate ventilation or booths.

Following the sale and subsequent use of the water storage basin, CIR demanded the removal of the newly poured concrete installed by Torres after removal of the water basin, which it recycled. The Blanchard grinding process employed by Torres had not generated hazardous waste, due to a water cooling system that complied with all local and state codes. This had eliminated the need for a state-issued temporary ID number for hazardous waste removal, as the process produced no hazardous waste. All waste materials were recycled in compliance with City, Fire Department, and local Code Enforcement requirements.

In July 2017, following a dispute over a $5,000 security deposit, Torres initiated a small claims action against CIR, which was settled. The settlement agreement stipulated that Torres agreed to make the necessary repairs by replacing the concrete, and after completion and approval by the owner, S.D. Herman, CIR would contact Herman to obtain and return to Torres the security deposit. Despite Torres completing the required repairs without generating any contamination, CIR failed to return the security deposit.

Five years after Torres completed the repair work, on or about January 4, 2022, CIR filed a lawsuit against Torres in Los Angeles County Superior Court for alleged failure to make proper corrections to the repairs under the settlement terms. The lawsuit claimed failure to comply with the Small Claims Court settlement without alleging fraud or malicious injury to the subleased property owned by S.D. Herman. This litigation continued until Torres, unable to afford further legal costs, filed for Chapter 7 bankruptcy. On September 20, 2023, an adversary proceeding was filed for determination of dischargeability based on alleged fraud and malicious injury to another's property.

Plaintiff did nothing to mitigate his supposed damages and did not sublease the property for nearly a decade following Mr. Torres vacating the property.

## PROCEDURAL HISTORY

Mr. Torres commenced his Chapter 7 case on June 21, 2023, and Plaintiff filed this adversary complaint later in 2023. Defendant promptly moved to dismiss the Complaint for failure to state a claim, which was denied. The parties participated in a court-ordered mediation on February 14, 2024 which was not successful. All discovery was completed by February 28, 2025.

## SUMMARY OF POINTS OF LAW WITH SUPPORTING AUTHORITIES
### Fraud – 11 U.S.C. § 523(a)(2)(A)

To establish that a debt is nondischargeable under 11 U.S.C. § 523(a)(2)(A), a creditor must prove by a preponderance of the evidence that the debtor made a false representation, knew it was false at the time, acted with the intent to deceive, and that the creditor justifiably relied on the representation and suffered damage as a result.

Additionally, the alleged debt must be for "money, property, services, or an extension, renewal, or refinancing of credit." Plaintiff cannot convert a post-dispute repair obligation into a

3

fraud claim unless he can show that a debt fitting within those categories was incurred because of the misrepresentation.

In *In re King*, 258 B.R. 786 (Bankr. D. Mont. 2001), Judge Kirscher held that a debtor's failure to leave rental property in good condition, even after making assurances, did not constitute fraud under Section 523(a)(2)(A) without evidence of an intent to deceive.

Similarly, in this case, Plaintiff alleges that Defendant failed to complete repairs and made promises he did not keep. However, there is no evidence that Defendant acted with fraudulent intent or that Plaintiff reasonably relied on any false statements. As in *King*, this is a contractual dispute, not a basis for non-dischargeability.

### Willful & Malicious Injury – 11 U.S.C. § 523(a)(6)

To establish that a debt is nondischargeable under § 523(a)(6), a debt must result from conduct that was both willful and malicious. This means Defendant must have intended to cause harm or acted knowing harm was substantially certain to result. Negligence, carelessness, or even reckless conduct is not sufficient. In this case, there is no evidence that Defendant acted with intent to injure Plaintiff or its property. Any alleged harm was unintended and incidental, clearly not the result of malicious conduct.

Similarly, the court in *In re King* also found that damage to property did not qualify as willful and malicious under Section 523(a)(6) unless there was a deliberate intent to harm the creditor.

### Plaintiff's Standing and Lessee-Based Damages

Plaintiff does not own the property. The property is owned by S.D. Herman Co., who leased the property to Plaintiff, who then sub-leased the property to Defendant. As a lessee, Plaintiff must show that it suffered actual harm to its leasehold interest or incurred liability to the property owner. There is no evidence that the property owner has made any claims against

4

Plaintiff or that Plaintiff was ever held responsible for the condition of the premises. Without ownership, liability, or actual injury, Plaintiff does not have a claim.

## SUMMARY OF DISPUTED ISSUES OF FACT
## AND SUPPORTING TESTIMONY

**1. Whether Plaintiff Consented to the Installation of the Equipment and the Hole and Was Aware of How It Was Being Used**

**Summary of Dispute:**

Plaintiff claims that Defendant installed heavy industrial equipment and cut a hole in the concrete floor of the leased premises without permission.

**Supporting Testimony:**

Defendant will testify that Plaintiff was fully aware of the installation of the Blanchard grinders and the water tank beneath them, including the need to cut into the concrete floor. Norberto Fregoso later purchased the tank himself. Defendant's daughter Christina Torres will support this with testimony that she witnessed Plaintiff discussing the tank and showing no objections. Raul Leon and Angel Lario will also testify that the installation work was done openly and with Plaintiff's full awareness.

**2. Whether Defendant's Business Produced Hazardous Waste**

**Summary of Dispute:**

Plaintiff alleges that Defendant's grinding operations generated sludge and other substances that constituted hazardous waste under environmental regulations.

**Supporting Testimony:**

Defendant will testify that the materials produced by his operations were primarily diluted coolant and small metal particles which are not classified as hazardous waste. Raul Leon, who worked on-site with Defendant, will confirm that the waste was contained and managed

5

appropriately. Christina Torres will also testify that the workspace was clean and orderly and that all environmental rules and regulations were strictly adhered to.

### 3. If Hazardous Waste Was Produced, Whether It Was Disposed of Properly

**Summary of Dispute:**

Plaintiff claims that Defendant disposed of hazardous sludge improperly by dumping it into a concrete hole in the ground or flushing it into the building's bathrooms. Plaintiff argues that this caused environmental contamination and left hazardous materials buried in the subleased space.

**Supporting Testimony:**

Defendant will testify that he never disposed of hazardous waste in the manner alleged and that he made efforts to ensure any byproducts were removed properly. Raul Leon and Angel Lario, who assisted in reopening and cleaning the hole, will testify that no hazardous waste or signs of improper dumping were observed. Christina Torres will also testify that all environmental rules and regulations were strictly adhered to.

### 4. Whether the Soil Was Contaminated

**Summary of Dispute:**

Plaintiff contends that the soil beneath the concrete hole was contaminated with hazardous sludge dumped by Defendant and left behind after the tank was removed.

**Supporting Testimony:**

Raul Leon and Angel Lario testify that they physically excavated the soil and found no odor or discoloration that would suggest contamination, and that the soil appeared normal and uncontaminated. Christina Torres will add that the premises looked clean and undisturbed when Defendant vacated.

///

///

///

### 5. Whether Plaintiff Failed to Mitigate Damages

**Summary of Dispute:**

Plaintiff alleges that it suffered financial harm due to its inability to lease the vacated space, asserting that the area was unusable because of the hole and alleged contamination. However, it appears that Plaintiff voluntary did not relet the space and did nothing to avoid economic harm.

**Supporting Testimony:**

Christina Torres will confirm that Defendant tried in good faith to complete remediation, and Raul Leon will testify that he was told Defendant had been barred from returning. Plaintiff's inaction over several years directly caused any claimed losses.

### 6. Whether Plaintiff Was Harmed Given That It Does Not Own the Property

**Summary of Dispute:**

Plaintiff seeks damages for alleged harm to the property, yet it does not own the premises. Plaintiff is a lessee, Defendant was a sublessee, and the building is owned by a third party who has not brought any claims or demanded repairs.

**Supporting Testimony:**

Defendant will testify that any modifications made to the space were performed with Plaintiff's knowledge and authority and that no complaints were made by the property owner. Christina Torres will support that there was never any indication that the landlord held Plaintiff liable for the condition of the premises.

### 7. Whether Defendant Made Any False Statements

**Summary of Dispute:**

Plaintiff contends that Defendant made false statements regarding his intent to clean and restore the hole, the condition of the premises, and his disposal practices, allegedly to avoid liability and to recover his security deposit improperly.

**Supporting Testimony:**

Defendant will testify that he made no knowingly false statements and that he consistently communicated with Plaintiff, performed cleanup tasks, and cooperated in mediation. The evidence will show Defendant's actions were consistent with his representations.

### 8. If False Statements Were Made, Whether a Debt Was Incurred as a Result of Those False Statements

**Summary of Dispute:**

Plaintiff argues that any false statements made by Defendant caused Plaintiff to incur damages, which it seeks to hold nondischargeable as a debt arising from fraud under 11 U.S.C. § 523(a)(2)(A).

**Supporting Testimony:**

Defendant will testify that Plaintiff did not rely on any false statements to its detriment, and that no damages attributable to reasonable reliance on statements by anything Defendant said or did. Christina Torres will confirm that Plaintiff already possessed all relevant information and initiated the cleanup and testing process independently.

### 9. If the Property Was Damaged, Whether That Damage Was Willful and Malicious

**Summary of Dispute:**

Plaintiff alleges that any property damage caused by Defendant was done willfully and maliciously, thereby making any resulting debt nondischargeable under 11 U.S.C. § 523(a)(6). Plaintiff claims Defendant acted with intent to harm Plaintiff's property or rights.

**Supporting Testimony:**

Defendant will testify that all modifications to the property, including the hole for the tank, were made with Plaintiff's knowledge and in the ordinary course of business. There is no credible evidence of hostility, recklessness, or intent to cause harm.

**ANTICIPATED EVIDENTIARY ISSUES**

Plaintiff's claim that Defendant contaminated the property with hazardous waste rests entirely on lay testimony from Norberto Fregoso and Leo Corona. Neither witness has any scientific or technical expertise, and Plaintiff failed to disclose expert witnesses. Whether a substance qualifies as hazardous waste or whether soil is contaminated are matters requiring scientific testing and expert analysis—not personal observations about how dirt looks or smells. Without expert testimony, Plaintiff cannot establish a key element of its claim. Any lay opinion on contamination, toxicity, or environmental harm should be excluded under Federal Rule of Evidence 701, as it falls outside the scope of permissible lay testimony.

Defendant will also raise standard objections at trial, including hearsay, lack of foundation, and relevant. In addition, Defendant has already filed written objections to Plaintiff's declarations.

Date: May 6, 2025

NEXUS BANKRUPTCY

BENJAMIN HESTON,
Attorney for Defendant

9